UNITED STATES of America,
Plaintiff,

v.

Joel SALDIVAR–VARGAS, Defendant.

No. 02CR3303.

United States District Court,
S.D. California.

Nov. 10, 2003.

Orlando Gutierrez, Assistant United States Attorney, San Diego, CA, for plaintiff.

Gary P. Burcham, San Diego, CA, for Defendant.

## ORDER GRANTING MOTION FOR RECONSIDERATION, GRANTING MOTION TO DISMISS, AND DISMISSING INDICTMENT

RHOADES, District Judge.

### I. Introduction

Defendant Joel Saldivar–Vargas ("Saldivar–Vargas") is charged in a one-count indictment with being an alien found in the United States after previously being "excluded, deported and removed" in violation of 8 U.S.C. § 1326. Saldivar–Vargas moved to dismiss the indictment on the ground that his prior removal proceeding may not be used to demonstrate that he was previously removed due to the immigration judge's ("IJ") failure to inform him of, and to allow him to apply for, discretionary relief from removal pursuant to Immigration and Nationality Act ("INA") § 212(c). The court denied that motion. Saldivar–Vargas has filed a motion for reconsideration in light of recent Ninth Circuit case law. For the reasons set forth below, the motion is granted, and the indictment is dismissed.

### II. Background

Saldivar–Vargas, a citizen of Mexico, was granted legal permanent resident status on December 1, 1990. On April 7, 1994, Saldivar–Vargas pleaded guilty to rape by a foreign object. He served 365 days, or one year, in county jail. Under the immigration laws then in effect, he was not deportable because his conviction did not meet the definition of "aggravated felony."

After Saldivar–Vargas' conviction, Congress made sweeping changes to the immigration laws. First, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104–132. Section 440(d) of the AEDPA, which was enacted on April 24, 1996, amended INA § 212(c) to, *inter alia,* preclude relief for aliens deportable as a result of an aggravated felony regardless of the amount of time served. *See Mattis v. Reno,* 212 F.3d 31, 35 (1st Cir.2000), *overruled on other grounds,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). At the time of its enactment, this change to INA § 212(c) had no effect on Saldivar–Vargas because his conviction remained a non-aggravated felony.

Next, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), P.L. 104–208, which went into effect in April 1997. *See I.N.S. v. St.Cyr,* 533 U.S. 289, 315, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). IIRIRA § 321(a)(3) amended the definition of "aggravated felony," and under that amended definition Saldivar–Vargas' conviction became an aggravated felony for which he was subject to removal pursuant to INA § 237(a)(2)(A)(iii). At the same time, IIRIRA § 304(b) repealed INA § 212(c) altogether.

In July 1997, Saldivar–Vargas was served with a Notice to Appear ("NTA"). A hearing was held before an IJ on September 5, 1997. The IJ found Saldivar–Vargas removable [1] for being an aggravat-

---

1. When the IIRIRA took effect on April 1, 1997, the term "deportation" was replaced with the term "removal." *See Jimenez–Ange-*

*les v. Ashcroft,* 291 F.3d 594, 597 (9th Cir. 2002). Because the Saldivar–Vargas' pro-

ed felon. Saldivar–Vargas was asked whether he wished to appeal, and he indicated he did not. Saldivar–Vargas was not informed of the availability of discretionary relief under Immigration and Nationality Act ("INA") § 212(c). He was subsequently removed from the United States.

The indictment charges that on November 18, 2002, Saldivar–Vargas, an alien who was previously "excluded, deported and removed," was found in the United States without the express consent of the Attorney General in violation of 8 U.S.C. § 1326.

### III. Analysis

 A successful collateral attack of a removal order requires a three-part showing. *See* 8 U.S.C. § 1326(d). First, the defendant must demonstrate that he has either exhausted his administrative remedies or that his waiver of his right to exhaust his administrative remedies was not "considered and intelligent," *i.e.*, valid. *See Id.; United States v. Ubaldo–Figueroa*, 347 F.3d 718, 725–26 (9th Cir.2003) ("The exhaustion requirement of [ ] § 1326(d), however, 'cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process,'" and such a waiver "does not comport with due process when it is not 'considered and intelligent.'") (quoting *United States v. Muro–Inclan*, 249 F.3d 1180, 1182 (9th Cir.2001)). Second, the defendant must demonstrate that he was denied a meaningful opportunity for judicial review of the underlying deportation. *See* 8 U.S.C. § 1326(d). Third, the defendant must establish that the entry of the order was "fundamentally unfair." *Id.* Entry of an order of deportation is "fundamentally un-

fair" where the defendant's due process rights are "violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Zarate–Martinez*, 133 F.3d 1194, 1197 (9th Cir.), *cert. denied*, 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998).

### A. *United States v. Ubaldo–Figueroa*

Saldivar–Vargas now contends that he is entitled to dismissal of the indictment based upon defects in his underlying deportation proceeding pursuant to *Ubaldo–Figueroa*, which was decided subsequent to this court's decision in the present case. In *Ubaldo–Figueroa*, the defendant was not informed of his right to appeal his deportation order. The Ninth Circuit, noting that "[i]t is 'mandatory' under the Due Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during a removal proceeding," concluded that the defendant had been deprived of a meaningful opportunity for judicial review because he was not informed of this right. 347 F.3d at 725–26. Consequently, the Ninth Circuit turned to the issue of prejudice. The Ninth Circuit concluded that Ubaldo–Figueroa had demonstrated he was prejudiced by the IJ's failure to inform him of his right to appeal because, *inter alia*, he had a "plausible" basis for challenging his deportation on the ground that the retroactive application of IIRIRA § 321(a)(3) to him violated his constitutional rights.

Although the Ninth Circuit did not, as Saldivar–Vargas suggests, hold that the retroactive application of IIRIRA § 321(a)(3) to aliens similarly situated is unconstitutional, its finding that such an

---

ceedings were commenced after April 1, 1997, he was placed in removal proceedings. *See Cortez–Felipe v. I.N.S.*, 245 F.3d 1054, 1055 (9th Cir.2001) ("If an alien's proceed-

ings commenced with an NTA on or after April 1, 1997, the alien is processed in removal proceedings.")(citing 8 C.F.R. § 239.1(a)). *See also* 8 U.S.C. § 1229b(b).

argument is "plausible" could be read as calling into question this court's finding that Saldivar–Vargas' constitutional rights were not violated during the removal process by the retroactive application of IIRIRA § 321(a)(3) to him. Nonetheless, as explained below, *Ubaldo–Figueroa* is not authority for the proposition that dismissal of the indictment is warranted here.

As noted, the requirements for dismissal of an indictment based on a collateral challenge to an underlying removal or deportation are that the alien exhausted his administrative remedies or did not validly waive his right to exhaust those remedies, the alien was deprived of an opportunity for meaningful judicial review, and the alien suffered prejudice. In *Ubaldo–Figueroa*, the alien did not validly waive his right to challenge his deportation order, and he was deprived of an opportunity for meaningful judicial review, *because he was not informed of his right to appeal.* See 347 F.3d at 725–26 ("Ubaldo–Figueroa's waiver of the right to appeal did not comport with due process because the IJ failed to ensure that Ubaldo–Figueroa knew that he had the right to appeal.") and at *6 ("[W]e find that Ubaldo–Figueroa was deprived of the opportunity for meaningful judicial review because the IJ did not inform him of his right to appeal his deportation order."). Here, Saldivar–Vargas was informed of his right to appeal.[2] Although he was not informed of his right to appeal on the ground that it was unconstitutional to apply IIRIRA § 321(a)(3) retroactively to him, a defendant need not be informed of every possible constitutional challenge he may have to his deportation order in order for his waiver of the right to appeal to be valid. *See United States v. Garza–Sanchez*, 217 F.3d 806, 810 (9th Cir.2000) (rejecting argument that an

alien's waiver of the right to appeal a deportation order is invalid unless the IJ informs the alien of "every potential ground for relief, including possible constitutional challenges to the deportation laws"). Accordingly, *Ubaldo–Figueroa* is not controlling authority and does not mandate dismissal of the indictment here.

**B. *United States v. Leon–Paz***

The court previously found that Saldivar–Vargas' waiver of his right to seek § 212(c) relief was valid, and that the IJ did not deprive Saldivar–Vargas of a meaningful opportunity for judicial review of the underlying deportation by failing to apprise him of his right to seek § 212(c) relief, because he was not in fact entitled to such relief. Subsequently, the Ninth Circuit decided *United States v. Leon–Paz*, 340 F.3d 1003 (9th Cir.2003). Leon–Paz, like Saldivar–Vargas, moved to dismiss his indictment based on the IJ's failure to inform him of his right to seek § 212(c) relief. The Ninth Circuit held that Leon–Paz was entitled to apply for § 212(c) relief because his case was a "congener of St. Cyr's" and that the IJ's failure to inform Leon–Paz of his entitlement violated his due process rights. *Id.* at 1007. Accordingly, the Ninth Circuit remanded to the district court for a determination of whether Leon–Paz had demonstrated prejudice, a prerequisite for dismissal. *See id.; see also United States v. Arrieta*, 224 F.3d 1076, 1079–80 (9th Cir.2000).

For purposes of the present analysis, Leon–Paz and Saldivar–Vargas are identically situated. Both defendants were convicted of crimes which, at the time of conviction, were not aggravated felonies for immigration purposes. Both were unaffected by the passage of § 440(d) of

2. In contrast, he was not informed of his right to apply for § 212(c) relief. As will be explained, *infra*, because of this failure and the

prejudice resulting therefrom, Saldivar–Vargas is ultimately entitled to dismissal of the indictment.

the AEDPA, which repealed INA § 212(c), because at that time of § 440(d)'s passage, neither was an aggravated felon. The convictions of both were transformed into aggravated felonies by the passage of IIRIRA § 321(a)(3). Removal proceedings were initiated against both after April 1, 1997. Both were found removable and were informed that they were not eligible for any relief from removal due to their aggravated felony convictions. Because Leon–Paz and Saldivar–Vargas are identically situated in all relevant respects, the court is constrained to follow *Leon–Paz* and to find that Saldivar–Vargas did not validly waive his right to appeal the removal order and was deprived of his right to judicial review because the IJ failed to inform him that he was entitled to apply for § 212(c) relief.[3] Thus, the court turns to the issue of prejudice.

■ To demonstrate prejudice from the IJ's failure to inform him of his right to apply for § 212(c) relief, Saldivar–Vargas need demonstrate only that he had "plausible grounds" for obtaining § 212(c) relief. *See Arrieta,* 224 F.3d at 1079; *Muro–Inclan,* 249 F.3d at 1184. In determining whether an alien is entitled to § 212(c) relief, the BIA has enumerated various factors to consider in determining whether or not to grant a section 212(c) petition:

> Favorable considerations include: 1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character. To be weighed against these factors are 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident.

*Yepes–Prado v. I.N.S.* 10 F.3d 1363, 1366 (9th Cir.1993) (internal citations omitted).

Here, Saldivar–Vargas has been living in the United States since the mid 1980's. Defendant became a temporary legal resident in 1998 and a permanent legal resident in 1990. Soon after his arrival, he was joined by his wife and his two Mexican citizen sons, who were 17 and 19 at the time of his removal. Defendant has three United States citizen daughters who were 10, 6 and 1 years of age at the time of his removal. Saldivar–Vargas has worked in the landscaping and agricultural industries and is the sole economic supporter of his family. According to him, he and his wife are extremely close, despite the fact that she was the victim of the crime that led to his removal. Moreover, Saldivar–Vargas represents to the court that he and children have an extremely close relationship, and it would be an extraordinary burden on them, both economically and emotionally, if he were removed from the United States. Finally, the conviction for which defendant was removed occurred over eleven years ago. Although not a fore-

---

**3.** The government in its papers suggests obliquely that the Ninth Circuit decided *Leon–Paz* incorrectly and, accordingly, the court should adhere to its previous decision. *See United States v. Saldivar–Vargas,* 273 F.Supp.2d 1130 (S.D.Cal.2003). However, at oral argument the government appeared to concede, as it must, that this court is constrained to follow Ninth Circuit precedent regardless of whether this court agrees with it or whether such precedent might be altered by the Supreme Court sometime in the future.

gone conclusion, on these facts, Saldivar–Vargas has made out a "plausible" claim for § 212(c) relief.[4]

## IV. Conclusion

The motion for reconsideration is granted. Defendant's motion to dismiss the indictment is granted. The indictment is hereby dismissed.

**IT IS SO ORDERED.**

---

4. It is noteworthy that, as recognized by the Supreme Court, approximately 50% of requests for § 212(c) relief were granted between 1989 and 1995. *See St. Cyr*, 533 U.S. at 296 n. 5, 121 S.Ct. 2271.